# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> CHRISTOPHER THIES, <br><br> Defendant. | No. CR08-3032-MWB <br><br> **REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS** |

The defendant Christopher Thies is charged with possession of a firearm and ammunition after having been convicted of a felony drug crime, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and possession of a firearm and ammunition while an unlawful user of a controlled substance, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). Doc. No. 1. On October 1, 2008, Thies filed a motion to suppress, Doc. No. 15, asking the court to suppress evidence seized by law enforcement authorities during a search of his residence on May 13, 2007; evidence seized during a subsequent search of his residence on May 18, 2007; and certain statements made by him to law enforcement officers on May 13, 2007. The plaintiff (the "Government") resisted the motion on October 9, 2008. Doc. No. 19.

The Trial Management Order assigned motions to suppress to the undersigned to conduct any necessary evidentiary hearing, and to prepare a report on, and recommended disposition of, the motion. Doc. No. 8, § IV.A. Accordingly, the court held a hearing on the motion on October 16, 2008. Assistant U.S. Attorney Forde Fairchild appeared on behalf of the Government. Thies appeared personally with his attorney, Assistant Federal Defender Michael L. Smart. The Government offered the testimony of Hamilton County Deputy Sheriff William Dean Derrig. The Government also offered into evidence Gov. Ex. 1, a probation agreement entered into by Thies on September 9, 2006; and Gov.

Ex. 2, search warrant papers for the May 18, 2007, search. The Government filed a supplemental memorandum in support of its resistance to the motion on October 21, 2008, Doc. No. 22, and the defendant declined the opportunity to file a supplemental brief, Doc. No. 23. The motion is now fully submitted.

The following background facts are relevant to consideration of Thies's motion to suppress. All of these facts are from the testimony of Deputy Derrig and the Government's two exhibits. The court finds that Deputy Derrig's testimony was truthful.

Shortly after midnight on May 13, 2007, Thies's girlfriend, Nicole Plain, called the police to make a domestic abuse report. In response to the call, Deputy Derrig met with Plain at a Casey's General Store in Jewell, Iowa. Plain was crying, upset, and frightened. She related that she and Thies had been to stock car races that evening, and Thies had been drinking. When they returned to the house where Thies and Plain lived together, Thies became upset, in part because he had not been able to purchase any marijuana. Thies became violent, broke a computer, and kicked a hole in the bathroom wall. Plain told the deputy she was concerned because there was a gun in the house.[1] She advised the deputy that Thies was on probation. She gave the deputy their address, and gave him authority to enter the house, secure the gun, and take possession of it.

Deputy Derrig drove to the residence while another officer followed in a separate vehicle. While Deputy Derrig was en route, he called his dispatcher to check on Thies's status, and learned there was an outstanding warrant for Thies's arrest from Sac County on a failure-to-appear charge. Because of this, the deputy decided he would be placing Thies under arrest.

When Deputy Derrig arrived at the residence, Thies was standing in the yard outside the house with two other men. The deputy did not know Thies, but he was familiar with the two other men, who were brothers. The deputy asked Thies for identification,

---

[1] She also told the deputy that Thies had a "bong" in the house.

and Thies complied. The deputy did not pat Thies down or place him under arrest immediately, but he did intend to place Thies under arrest on the outstanding warrant at some point during the encounter.

Thies appeared to the deputy to be under the influence of alcohol because his speech was somewhat slow, his eyes were watery and bloodshot, and he was having difficulty putting sentences together. The deputy asked Thies if he had been drinking, and Thies responded, "No, not very much." The deputy then asked Thies if there was a gun in the house, and Thies responded, "Why do you want to know?" The deputy asked again, and Thies responded, "Yes." The deputy then asked Thies if he was on probation, and Thies responded that he was. The deputy asked Thies if he was supposed to be drinking while on probation, and Thies said, "No."

Deputy Derrig then informed Thies of the outstanding warrant from Sac County, and placed him under arrest. The deputy cuffed Thies and took him to his squad car. He told Thies he was going into the house to retrieve the gun because Plain had given him permission to do so. In response, Thies called out to his friends to lock the door to the house. The deputy understood that by this remark, Thies was attempting to deny his entry into the house. The deputy proceeded to enter to the house anyway.[2] Before he entered the house, Thies told him, "Please turn off my stove."

The deputy went into the house, shut off the stove, and searched for the gun. He found it in an open gun rack in an upstairs room. It was a bolt-action shotgun. He opened the bolt on the gun, and a live round ejected. Near the gun, he observed a box of ammunition, but he did not seize it. He took the gun and put it in the trunk of his squad car. The deputy testified it was not his intent to formally seize the firearm; rather, he placed the gun in his trunk to secure it for the protection of Plain, Thies, and the public,

---

[2]Deputy Derrig believed that Plain's consent to search the house authorized him to do so even over an objection by Thies. The deputy was not aware of *Georgia v. Randolph*, 547 U.S. 103, 126 S. Ct. 1515, 164 L. Ed. 2d 208 (2006).

due to Thies's intoxicated, agitated state. The deputy then took Thies to the jail for booking.

Later, Deputy Derrig ran a criminal history check on Thies and discovered that Thies had a prior felony conviction. On May 18, 2007, the deputy obtained a search warrant for the house. In executing the warrant, he recovered the ammunition and some other evidence.

## *ANALYSIS*

### *A. Statements by the Defendant Before His Arrest*

Thies moves to suppress the statements he made in his front yard before he was formally placed under arrest. These statements are as follows: (1) When the deputy asked Thies if he had been drinking, Thies responded, "No, not very much." (2) When the deputy asked Thies if there was a gun in the house, Thies responded, "Why do you want to know?" (3) When the deputy asked again if there was a gun in the house, Thies responded, "Yes." (4) When the deputy asked Thies if he was on probation, Thies responded that he was. (5) When the deputy asked Thies if he was supposed to be drinking while on probation, Thies said, "No."

Thies argues these statements should be suppressed because they were made during custodial interrogation by the police at a time when he had not been advised of his rights under *Miranda*. The Government responds that (1) Thies was not in custody at the time he made these statements, and (2) the questions asked of Thies were prompted by a concern for public safety rather than to elicit evidence, and therefore *Miranda* does not apply.

"*Miranda* warnings are required only where a person's freedom has been so restricted as to render him in custody." *United States v. Cartier*, ___ F.3d ___, ___, 2008

WL 4273610 at *5 (8th Cir., Sept. 19, 2008). In *United States v. New*, 491 F.3d 369 (8th Cir. 2007), the court explained:

> "[T]he ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125, 103 S. Ct. 3517, 77 L. Ed. 2d 1275 (1983) (per curiam) (internal quotation omitted). The custody inquiry thus turns on whether, given the totality of the circumstances, a reasonable person would have felt at liberty to terminate the interrogation and leave[.] *Thompson v. Keohane*, 516 U.S. 99, 112, 116 S. Ct. 457, 133 L. Ed. 2d 383 (1995)[.]

*New*, 491 F.3d at 373.

There are reasonable limits on when an officer must administer *Miranda* warnings. As the court explained in *United States. v. Flores-Sandoval*, 474 F.3d 1142 (8th Cir. 2007):

> "[P]olice officers are not required to administer Miranda warnings to everyone whom they question." *United States v. LeBrun*, 363 F.3d 715, 720 (8th Cir. 2004) (en banc), quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977). The protections of Miranda apply to custodial interrogations. *See United States v. Black Bear*, 422 F.3d 658, 661 (8th Cir. 2005); *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); *Minnesota v. Murphy*, 465 U.S. 420, 430, 104 S. Ct. 1136, 79 L. Ed. 2d 409 (1984). A custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way." *Maine v. Thibodeau*, 475 U.S. 1144, 1146, 106 S. Ct. 1799, 90 L. Ed. 2d 343 (1986), quoting *Miranda*, 384 U.S. at 444, 86 S. Ct. 1602 (1966). "The ultimate inquiry to determine custody for Miranda purposes is whether there was a formal arrest, or restraint on freedom of movement of the degree associated with a formal arrest." *Black Bear*, 422 F.3d at 661.

> In making this determination, the court first considers the totality of the circumstances confronting [the defendant] and then determines whether a reasonable person in his position would consider his "freedom of movement restricted to the degree associated with formal arrest." *United States v. Czichray*, 378 F.3d 822, 826 (8th Cir. 2004). This determination is "based on the objective circumstances, not on subjective views of the participants." *Black Bear*, 422 F.3d at 661; *see LeBrun*, 363 F.3d at 720.
>
> Factors indicating custody are: (1) whether the suspect was informed that he was free to leave and that answering was voluntary; (2) whether the suspect possessed freedom of movement; (3) whether the suspect initiated contact or voluntarily acquiesced; (4) whether strong arm tactics or strategies were employed; (5) whether the atmosphere was police dominated; or, (6) whether the suspect was placed under arrest at the end of questioning. *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990). These factors, however, are not exclusive, and custody "cannot be resolved merely be counting up the number of factors on each side of the balance and rendering a decision accordingly." *Czichray*, 378 F.3d at 827.

*Flores-Sandoval*, 474 F.3d at 1146-47.

In the present case, the factors for determining whether this was a custodial interrogation weigh in both directions. Thies was not placed under formal arrest before he was questioned, but he was never informed that he was free to leave, and Derrig testified Thies would not have been allowed to leave had he attempted to do so. In addition, Thies was, in fact, placed under arrest at the conclusion of the questioning. On the other hand, Thies did not initiate contact with the deputy, but he never attempted to walk away, and he voluntarily acquiesced in the contact. His freedom of movement was not restricted in any way by the deputy, and he was "on his home turf" throughout the encounter. *See United States v. Czichray*, 378 F.3d 822, 826 (8th Cir. 2004) ("When a person is questioned 'on his own turf,' . . . we have observed repeatedly that the

6

surroundings are 'not indicative of the type fo inherently coercive setting that normally accompanies a custodial interrogation.') (quoting *United States v. Rorex*, 737 F.2d 753, 756 (8th Cir. 1984), and *United States v. Helmel*, 769 F.2d 1306, 1320 (8th Cir. 1985)). In this case, although there were two law enforcement officers present at the scene, the atmosphere of the police questioning was not particularly "police dominated." Thies was standing outside of his home with his friends. His movements were not restricted, and he was not patted down.

Given the totality of the circumstances, the court finds that a reasonable person in Thies's position would have felt at liberty to terminate the interrogation and leave. This is true despite the fact that the officers knew about the outstanding warrant and would not have allowed Thies to leave. The determination is made objectively, based on a person in Thies's position, without regard to what the officers knew at the time. *See Flores-Sandoval, supra*. The court finds that Thies was not in custody when he made these statements, and they need not be suppressed.

However, the court overrules the Government's argument that the public safety exception to *Miranda* applied here. The public safety exception provides that "a suspect's answer may be admitted into evidence if it was obtained in response to a question asked in furtherance of public safety and not designed solely to solicit testimonial evidence, even if *Miranda* warnings had not yet been given." *United States v. Everman*, 528 F.3d 570, 572 (8th Cir. 2008) (citing *New York v. Quarles*, 467 U.S. 649, 655-56, 659 & n.8, 104 S. Ct. 2626, 2631-32, 2633 & n.8 (1984). "The exception does not depend upon the questioning officers' subjective motivation. Rather, it is judged under an objective standard and applies when police officers ask questions reasonably prompted by a concern for public safety." *Everman, supra* (internal quotation marks omitted; citing *United States v. Liddell*, 517 F.3d 1007, 1009 (8th Cir. 2008); quoting *Quarles*, 467 U.S. at 656, 104 S. Ct. at 2632).

7

Applying an objective standard to the questions asked by Deputy Derrig, a police officer in his position would have had no reason, based on a concern for "public safety," to ask Thies whether there was a gun in the house. The deputy already knew there was a gun in the house – Nicole Plain had told him it was there. Asking Thies about whether there was a gun in the house was not based on a concern for "public safety," but was for the purpose of obtaining an incriminating admission from him. The same is true for the other questions asked of Thies (i.e. whether he had been drinking, whether he was on probation, and whether he was supposed to be drinking while on probation).

Nevertheless, because Thies was not in custody when he made these statements, they should not be suppressed.

### B. *Lawfulness of Entry Into the House*

The Fourth Amendment guarantees the right of individuals "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures…." U.S. Const. amend. IV. It is a "'basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.'" *Groh v. Ramirez*, 540 U.S. 551, 559, 124 S. Ct. 1284, 1290, 157 L. Ed. 2d 1068 (2004) (quoting *Payton v. New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 1380, 63 L. Ed. 2d 639 (1980)). An exception to the warrant requirement is a search based on consent knowingly and voluntarily given; a second exception is a search based on "exigent circumstances." *United States v. Hogan*, 539 F.3d 916, 922 (8th Cir. 2008); *United States v. Uscanga-Ramirez*, 475 F.3d 1024, 1027-28 (8th Cir. 2007).

Thies asks the court to suppress the gun seized from his house by Deputy Derrig, arguing the deputy's entry into his house was unlawful. At the time the deputy entered the house, he believed he was authorized to do so based on the consent of Nicole Plain, one of the co-occupants of the house. He believed he was entitled to enter the house even in

8

the face of an express objection to the entry by Thies, a co-occupant of the house who was physically present at the time.

The lawfulness of the deputy's entry into the house is questionable in light of *Georgia v. Randolph*, 547 U.S. 103, 126 S. Ct. 1515, 164 L. Ed. 2d 208 (2006), discussed below. The Government does not contest the applicability of *Randolph*, but offers two justifications for the entry: (1) consent,[3] and (2) inevitable discovery. The court is not certain, however, that *Randolph* renders the deputy's entry into the house to retrieve the gun unlawful under the specific facts of this case.

In *Randolph*, the defendant's wife called the police because of a domestic dispute involving the custody of their son. When the police arrived at their house, the defendant was not present, but his wife was, and she told the police her husband was a cocaine user. The defendant arrived at the house, and denied being a cocaine user. His wife then told the officers there were "items of drug evidence" in the house. One of the officers asked the defendant for permission to search the house, and the defendant denied the request. The officer then asked the defendant's wife for consent to search, and she readily gave it. She led the officers to a bedroom that she identified as belonging to the defendant. In the bedroom, the officers discovered cocaine. The Supreme Court decided that on these facts, the cocaine should be suppressed, holding "a physically present inhabitant's express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant." *Randolph*, 547 U.S. at 122-23, 126 S. Ct. at 1528. The Court distinguished this situation from the circumstances of *United States v. Matlock*, 415 U.S. 164, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974), in which the Court held a warrantless search was reasonable where the police obtain the voluntary consent of a co-occupant. In *Matlock*, the Court

---

[3]The Government argues "consent" based on Thies's probation agreement, which provides, "I will submit to a search of my person, property, residence, vehicle, or personal effects, at any time, if reasonable suspicion exists, by a peace officer or probation/parole officer." Gov't Ex. 1, ¶ 12. The Government does not argue that Thies consented to the search, or that Nicole Plain's consent authorized the search.

9

concluded a co-occupant assumes the risk that another co-occupant will permit a search. *Matlock*, 415 U.S. at 171 n.7, 94 S. Ct. at 993.

The facts in the present case are similar to those in *Randolph*, but there are important differences. In *Randolph*, the co-occupant of the house told the police there were drugs in the house and consented to a search of the house. In the present case, the co-occupant told the deputy that there was a gun in the house, she feared for her safety because Thies was intoxicated and violent, and she wanted the deputy to enter the house to secure the gun and remove it. The purpose of the search in *Randolph* was to obtain evidence of a crime so that it could be used against the defendant. In the present case, the deputy entered the house and seized the gun in response to a request that he do so by a co-occupant who was in fear for her safety.

The court finds these distinctions are significant. In *Randolph*, the two dissenting Justices were concerned that the Court's ruling would shield spousal abusers and other violent co-occupants who refuse to allow the police to enter a dwelling when their victims ask the police for help. *See Randolph*, 547 U.S. at 139, 126 S. Ct. at 1537-38. The majority responded that the Court's decision "has no bearing on the capacity of the police to protect domestic victims." *Randolph*, 547 U.S. at 118, 126 S. Ct. at 1525. The Court observed:

> [N]o question has been raised, or reasonably could be, about the authority of the police to enter a dwelling to protect a resident from domestic violence; so long as they have good reason to believe such a threat exists, it would be silly to suggest that the police would commit a tort by entering, say, to give a complaining tenant the opportunity to collect belongings and get out safely, or to determine whether violence (or threat of violence) has just occurred or is about to (or soon will) occur, however much a spouse or other co-tenant objected."

*Id*.

Deputy Derrig was told by Nicole Plain that Thies was intoxicate and violent, and she wanted the deputy to enter the house and remove a gun because she feared for her safety. A reasonable officer, after hearing Plain's concerns and confirming that Thies was, in fact, intoxicated, and he had a gun in the house, would have concluded that Plain needed protection from domestic violence. The court finds that *Randolph* does not extend to the facts of the present case. *See United States v. Hudspeth*, 518 F.3d 954, 961 (8th Cir. 2008) (*Randolph* is case-specific and extends no further than its particular facts); *United States v. Henderson*, 536 F.3d 776 (7th Cir. 2008) (strictly limiting the application of *Randolph*). The deputy's entry into the house to retrieve the gun was authorized by the consent of the co-occupant, and was not unlawful. See *Matlock*, *supra*.[4]

The Government also claims Thies consented to the entry because he was on probation, and one of the terms of the probation agreement was, "I will submit to a search of my person, property, residence, vehicle, or personal effects, at any time, if reasonable suspicion exists, by a peace officer or probation/parole officer." Gov't Ex. 1, ¶ 12. The Government argues this provision constitutes a consent justifying the entry into his house by Deputy Derrig to take possession of the gun.

The language of Thies's probation agreement would not seem, on its face, to be such a consent. From a plain reading, it seems to be an agreement to submit to a search upon reasonable suspicion rather than a consent to a search at any time in the future. Nevertheless, this type of language has been held to be an authorization for a lawful search. *See, e.g.*, *United States v. Becker*, 534 F.3d 952, 956 (8th Cir. 2008) ( holding that identical language in a probation agreement was sufficient to justify a search based on reasonable suspicion); *United States v. Vincent*, 167 F.3d 428, 430 (8th Cir. 1999)

---

[4]It also appears that probable cause and exigent circumstances might be a justification for the entry. *See Kleinholz v. United States*, 339 F.3d 674, 676 (8th Cir. 2003). However, the Government has not asserted this argument.

11

(upholding such a search based on reasonable suspicion, even in the absence of probable cause[5]).

In the present case, however, the deputy who entered Thies's house did not do so pursuant to the provisions of a probation agreement. In fact, he was not even aware of the existence of the agreement or any of its terms. While in some circumstances, an action by an officer can be objectively reasonable even if the officer's state of mind was not based on reason, *see, e.g.*, *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404, 126 S. Ct. 1943, 1948, 164 L. Ed. 2d 650 (2006), the court does not believe this principle can extend to the facts of the present case. Neither Deputy Derrig nor any other officer involved in the investigation and Thies's arrest was aware of the fact that Thies was subject to a probation agreement that authorized a search of his house. The court can find no authority that would justify the search based on a probation agreement of which the officer was not even aware, and the Government has cited no such authority.

Nevertheless, as the court has found, the seizure of the gun was lawful under *Randolph*, and should not be suppressed.

## C. Inevitable Discovery

The Government also argues that suppression of the firearm would be unnecessary even if was unlawfully seized because discovery of the firearm was inevitable. Since the court has found that the entry was not unlawful, the court does not need to reach this issue. However, because this is a report and recommendation, the court will comment on the issue briefly.

The Eighth Circuit Court of Appeals has explained the inevitable discovery rule as follows:

---

[5]In *Griffin v. Wisconsin*, 483 U.S. 868, 873-75, 107 S. Ct. 3164, 97 L. Ed. 2d 709 )1987), the Court upheld a warrantless search of a probationer's home with less than probable cause.

> To succeed under the inevitable-discovery exception to the exclusionary rule, the government must prove by a preponderance of the evidence: (1) that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation.
> *United States v. Wilson*, 36 F.3d 1298, 1304 (5th Cir. 1994).

*United States v. Conner*, 127 F.3d 663, 667 (8th Cir. 1997) (following the holding in *Nix v. Williams*, 467 U.S. 431, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984)); *but see United States v. Thomas*, 524 F.3d 855 (8th Cir. 2008) (Colloton, J., concurring) (questioning whether the Eighth Circuit test in *Connor* is consistent with *Nix*).

The Government argues both of the requirements of the inevitable discovery rule have been met in the present case. The court agrees. The Government argues there was a reasonable probability that the gun and ammunition would have been discovered by lawful means. This is because the deputy, after arresting Thies, learned that he was a convicted felon, and after learning this fact, he obtained a warrant to search the house and seize the ammunition he observed in the house. This same course of events likely would have occurred had the deputy simply arrested Thies without entering the house to seize the gun. He knew there was a gun in the house because both Thies and Plain had told him so. Once the deputy learned Thies had a felony conviction, he would have obtained the search warrant and found both the gun and the ammunition in the house.

The second element is more problematic, but the court finds this requirement is satisfied, as well. The investigation that revealed Thies's felony conviction was not a result of the seizure of the gun from the house. The fact that the gun was seized at the time of Thies's arrest did not result in the deputy finding out about the felony conviction, and was not a factor in the deputy's application for a search warrant for the house. Accordingly, the inevitable discovery rule would apply.

## D. Search Warrant

Thies argues the search warrant was based on unlawfully-obtained information,[6] and the warrant was the fruit of the poisonous tree. Because the court has found that the

---

[6]The affidavit in support of the search warrant provided as follows:

> On May 13, 2008 I was dispatched to a call of a verbal altercation between Christopher Thies and Nicole Plain at their residence at 3371 Xircus Ave. in rural Hamilton County. Nicole had left the residence and went to the Casey's General Store in Jewell, Iowa to get away from Christopher. Nicole's father Dennis Plain had called Hamilton County Dispatch to report the incident. I arrived at Casey's in Jewell and spoke with Nicole to ascertain her well being. Nicole stated that she and Chris had been to the races at the Hamilton County Fairgrounds earlier in the night and had come home to 3371 Xircus Ave. And got into and [sic] argument about the house being dirty and that Chris was upset because he wanted to purchase marijuana but could not. Nicole stated that there was a bong used for smoking marijuana in the residence possibly in the living room. Nicole also stated that Chris was on probation and had a gun, but did not know what kind. I received verbal permission from Nicole Plain to search the residence.
>
> While going to the residence at 3371 Xircus, I requested a check of Christopher Thies for wants and warrants by the Hamilton County dispatcher. Christopher Thies had a valid warrant from Sac County Iowa.
>
> On arrival at the residence at 3371 Xircus Ave. I spoke with a male subject who stated that he was Christopher Thies. Mr. Thies presented to me an Iowa ID card that confirmed his identity. I confirmed the validity of the warrant and placed Christopher Thies under arrest.
>
> I then went into the house at 3371 Xircus to find the gun, to secure it for the safety and welfare of both parties. I located the gun (a 16 gauge bolt action shotgun) in plain view in the upstairs of the house. The shotgun was loaded with a shotgun shell in the chamber and the bolt closed. I unloaded the shotgun and placed it in my squad car for transport back to the Sheriff's Office. A box of shotgun ammunition for the shotgun was also observed by me under the gun rack where the shotgun was located. The box of ammunition was not taken by me at that time.
>
> While at the Hamilton County jail, I requested a criminal history of Christopher Thies. The criminal history showed that Christopher Thies had been convicted of a felony in Arizona in 2002.

Gov't Ex. 2, pp. 2-3.

information submitted in support of the search warrant was lawfully obtained, this argument must fail.

## *CONCLUSION*

For the reasons discussed above, the undersigned respectfully recommends that Thies's motion to suppress be denied. Objections to this Report and Recommendation must be filed **by October 29, 2008**. Responses to objections must be filed by **November 3, 2008**.

IMPORTANT NOTE: Any party planning to lodge an objection to this Report and Recommendation must order a transcript of the hearing promptly, but not later than **October 27, 2008, <u>regardless of whether the party believes a transcript is necessary to argue the objection</u>**. If an attorney files an objection without having ordered the transcript as required by this order, the court may impose sanctions on the attorney.

**IT IS SO ORDERED.**

**DATED** this 23rd day of October, 2008.

*[signature]*

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT